## MISSOURI, K. & T. RY. CO. v. ELLIOTT.

### (Circuit Court, C. D. Missouri, W. D.. May 29, 1893.)

1. ARBITRATION—SUBMISSION—WHAT CONSTITUTES.

Defendant undertook to erect stone crushers along complainant's railroad, and furnish it with a quantity of broken stone at specified prices. The contract provided that when the stone was all furnished complainant should have the option of buying the crushers, and that, "if a satisfactory price cannot be agreed on between the parties, each shall select an arbitrator, and these shall select a third, who shall fix the price of the crusher plants, and whose decision shall be final." *Held*, that this was a submission to arbitration, and not a stipulation for a mere appraisal by three persons; and the decision of such persons has the force and is subject to the conditions of an award.

2. SAME—VACATING AWARD—EQUITY JURISDICTION.

Equity has jurisdiction of a bill by complainant to set aside such award on the ground of misconduct of the arbitrators, notwithstanding it might have availed itself of such a defense, by virtue of a state statute, in an action brought by defendant on the award in a state court; for the adequate remedy at law which is the test of the equitable jurisdiction of the federal courts is that which existed when the judiciary act of 1789 was adopted, unless subsequently changed by act of congress.

In Equity. On demurrer to bill. Suit by the Missouri, Kansas & Texas Railway Company against John S. Elliott. Demurrer overruled.

Statement by PHILIPS, District Judge:

The respondent brought suit at law in the state court against the complainant, based on contract. The respondent had a contract with the complainant by which he was to buy and put up on complainant's line of railroad certain stone crushers, for the purpose of crushing stone to be used by the railroad as ballast on its track. The respondent was to furnish a minimum amount of such stone for a given period of time at a specified price. At the end of the stated time the complainant had the option to take these crushers from respondent, with all the machinery and property connected with the operation of the same, on notice of its election so to do; and the respondent was at once to deliver the same to complainant. The contract provided, in such contingency, that if the parties were not able to agree upon a fair price for these, to select a third person, to appraise the property and fix the price therefor. This was done, and the three persons so chosen made their valuation, and reported the same. The complainant refusing to accept this valuation, the respondent instituted suit to recover the amount of the award. After removal of this suit by the complainant into this court, it filed its cross bill, alleging partiality, irregularity, and fraud in the arbitrators, which resulted in a large overvaluation, and praying for a vacation of the award, and an equitable and fair ascertainment of the value of the property, which sum the bill offers to pay. The bill sets out with much detail the wrongs complained of, but in view of the principal questions discussed in the following opinion it is not deemed necessary to further follow the bill. The respondent demurs to this bill for the reasons that it does not show sufficient grounds to entitle the complainant to go upon the equity side of this court, and because the matters of defense which the complainant has in fact to the cause of action at law could be availed of by answer therein, etc.

James Hagerman and G. P. B. Jackson, for complainant.
Cosgrove & Johnson, for respondent.

PHILIPS, District Judge, (after stating the facts.) Many questions were argued at the hearing of this demurrer which are not necessary now to be decided. The real question is twofold: First, does the bill on its face show such equity as to entitle the complainant to any relief? and, second, are the rights sought to be enforced such as, under the system of practice which obtains in this court, the plaintiff can fully avail itself of in defense to the action at law? The demurrant plants himself mainly upon the proposition of law that the agreement out of which this controversy springs is not for an arbitration in its legal sense, and that the finding of the referees is not in strictness an award; but that it is merely a contract of sale of designated property, and the office of the persons chosen thereunder was merely that of appraisers or valuers of the things sold. It is further claimed that the suit is not, therefore, founded on an award, but on the contract for the purchase price fixed by the appraisers, and that consequently no antecedent oath was required to be taken, as in case of arbitration, and no notice to the parties was required to be given of the time and place of the meetings of the referees; in support of which the following authorities are cited: Leitch v. Miller, 40 Mo. App. 180; Leonard v. Cox, 64 Mo. 32; Yeatman v. Clemens, 6 Mo. App. 210; Holmes v. Shepard, 49 Mo. 600; Zallee v. Insurance Co., 44 Mo. 530; Garred v. Macey, 10 Mo. 161; Curry v. Lackey, 35 Mo. 389; Morse, Arb. p. 39; Norton v. Gale, 95 Ill. 533; Stose v. Heissler, 120 Ill. 433, 11 N. E. Rep. 161,—all of which might possibly be conceded for the purposes of this demurrer, and yet, on the theory of respondent there is perhaps disclosed by the bill such irregularity and vice as ought to invite equitable interposition. For instance, the contention of respondent is that the referees were simply clothed with authority to make an inspection of the property, without more, and the valuation placed thereon by them was a mere expression of their opinion, and not impeachable for any misjudgment. And so it is said in Norton v. Gale, 95 Ill. 543:

"But where the office of the party to whom the submission is made is limited to a simple appraisal of value, he is expected to act on his own knowledge and opinions only; and hence neither evidence of witnesses nor statements of parties or counsel is contemplated."

It would therefore seem to follow that, if one of the parties was heard to make statements before the referees as to valuation, and the opinion of the referees was controlled or influenced thereby, it was outside of the province of the appraisers, and ought to be subject to review; and it is quite inferable from what the court say on pages 539, 540, of this opinion, as also from the cases cited from Missouri, (Holmes v. Shepard, 49 Mo. 603; Leonard v. Cox, 64 Mo. 36,) that, if the appraisers were not disinterested, and the valuation did not reflect their independent, honest judgment and the like, equitable interference would be justified.

The bill charges, inter alia, that the respondent, through his agent, in the absence of and without notice to complainant, was persistently present during the appraisement, exhibiting to the referees extraneous evidence of value, and persuading them that it should be accepted, and that they did so accept, and that one of the appraisers was an interested person. Then, again, the bill charges that the appraisers did not make even a personal examination of all the property valued by them. Where the law makes the finding, when based upon the opinion of appraisers, final, it is, ex aequo et bono, implied that such opinion is based on knowledge, and such knowledge must come either from a personal examination of the thing appraised or it must come from other external evidence. If from the former source, and the inspection was only of part of the property, it cannot be said to be an honest judgment, within the meaning of the law. If from the latter source, the taking of evidence implies a hearing, and the immutable law of justice is that both sides should be heard; and wherever the hearing is had, notice of time and place, unless dispensed with by consent, is an indispensable right, for "the law loathes a judgment without a hearing."

In respect of the question whether or not the proceeding in this case partook of the nature of an arbitration, or was simply that of mere valuers, it occurs to me that a material line of separation will be found to arise on the written instrument or contract of reference. Where the contract provides itself for the sale of the subject by barter, and provides that the purchase price therefor shall be fixed by a designated third person or persons to be chosen, without more, the title to the property passes by operation of the contract; and under such contract, there being no matter of dispute between the parties themselves, the essential elements of an arbitration are wanting. In such case the manifest object of the contract is to prevent a dispute. But whenever between the contracting parties an essential matter of controversy arises, growing out of the contract itself, about which they are unable to agree, and they provide in such contingency for a reference to a domestic tribunal of their own selection, then the case presents the essential qualities of an arbitration.

It will be found in every one of the cases cited by counsel for respondent that the contract provided in the first instance for valuers of the property transferred, without any effort being first had between the parties to come to an agreement, with the single exception of Holmes v. Shepard, supra, in which case it is evident to my mind that Judge Adams' attention was not directed to the distinction here sought to be made, for the fact is the case was being disposed of by the court on other grounds. This distinction is observed by text writers and courts, and must be because of the inherent principle involved. Russ. Arb. (3d Ed.) p. 43, after referring to the cases bearing on this question, says:

"The valuer, etc., is not an arbitrator in the proper sense, unless there have been differences between the parties on the point, previous to their submit-

ting it to his decision. A decision which precludes differences from arising, instead of settling them after they have arisen, is for many purposes not an award."

### Morse, Arb. p. 36, says:

"To furnish a sufficient basis for entering into a submission, no legal cause of action in favor of either party need exist. That there is a dispute, controversy, or honest difference of opinion between them concerning any subject in which they are both interested, is enough."

### In Curry v. Lackey, 35 Mo. 389, it is said:

"A reference to arbitration occurs only where there is a matter in controversy between two or more parties." "If the parties have a difference or dispute however trivial, or upon a matter however simple, and in whatever mode the truth is to be ascertained, and have selected an indifferent third person to be the judge between them, and bind themselves to abide his decision, that seems to us a submission to arbitration, and the decision to be an award." Smith v. Railroad Co., 36 N. H. 490.

### The paragraph of the contract in question is as follows:

"If satisfactory price cannot be agreed upon between the parties of the first part and the parties of the second part, then each party to select an arbitrator, and these to select a third, who shall fix the price of the three crusher plants, and whose decision shall be final."

Aside from the fact that the parties designated the referee "an arbitrator," it is apparent that before the arbitrators or referees could lawfully act or come into existence it must appear that the parties themselves, after trial, had been unable to agree upon "a satisfactory price." Therefore, when they did disagree about this most material matter, there was a controversy between them, which constituted the very basis of the reference. What possible distinction in reason and on principle can be made between this character of controversy and one where A. writes to B. that he could keep his (A.'s) horse for a "satisfactory price," to which B. assents, but when they meet they are unable to agree on a price, and thereupon submit the matter to the arbitrament of third parties to decide for them? There certainly is a dispute between them respecting property which they cannot among themselves reconcile, and for that reason they refer it to arbitration. What possible difference can it make, so far as the legal status of the referees is concerned, that the parties in advance provided for the submission on the contingency of their disagreement, or determining on such submission after they do disagree? The object in either case is to have the matter of controversy between friends settled by reference to a domestic, rather than a judicial, tribunal.

On the other branch of the case, as to the right of the complainant to maintain this cross bill, it is to be observed that the adequate remedy at law which is the test of equitable jurisdiction in the federal courts is that which existed when the judiciary act of 1789 was adopted, unless subsequently changed by acts of congress. Boyle v. Zacharie. 6 Pet. 658; McConihay v. Wright, 121 U. S. 206, 7 Sup. Ct. Rep. 940. So it does not follow that where, under the state code abolishing many of the ancient landmarks between law and equity proceedings, a defendant may avail himself of equi-

table matters of defense, he may do so in this jurisdiction. I understand the ancient rule of equity to be that wherever an award, or whatever else it may be named, is to be assailed by reason of some infirmity or vice lying outside of the record or the report, not disclosed or discoverable thereby, a resort to equity for relief is the proper remedy. "It is well known that when a suit is brought at common law upon an award no extrinsic circumstances or matters of fact dehors the award can be pleaded or given in evidence to defeat it. Thus, for example, fraud, partiality, misconduct, or mistake of the arbitrators is not admissible to defeat it, but courts of equity will in all such cases grant relief, and upon due proofs set aside the award." 2 Story, Eq. Jur. §§ 887, 1452, 1453. So it is said in Ruckman v. Ransom, 35 N. J. Law, 565-571:

"The remedy for a usurpation of jurisdiction, as well as for fraud or other mistake, is in a court of equity. This is the rule as stated in most approved text-books."

See, also, Morse, Arb. 321, 331, 332. In Wood v. Railway Co., 39 Fed. Rep. 52, it is held that an attack on estimates of an engineer in a railroad construction contract on the ground of fraud and mistake is properly made in equity. Inter alia, the court says:

"Of course, if an estimate thus made is regarded in the light of an award made by an arbitrator, the authorities are practically all one way,—resort must be had to a bill in equity, and neither fraud nor mistake can be alleged or proven to avoid the estimate in a suit at law on a contract to recover the balance due."

The bill also alleges that, connected with and incidental to the contract which is the basis of the action at law and the bill in equity, certain real estate was acquired by respondent for the purpose of a rock quarry on which one of the crusher plants so sold to complainant was located, and that respondent asserts title thereto, and is demanding a royalty for the use thereof by complainant. It is averred in the bill that respondent acquired such real estate for the use of said plant, and that complainant in equity is entitled to have conveyed to it whatever right, title, or interest respondent holds thereto. If such be the right of complainant, it is enforceable only in a court of equity. Whether or not this right exists in fact, and so adheres to the principal contract of which this litigation is predicated as to entitle complainant to set it up in this cross bill, is not clear, but it can best be determined by the chancellor on the coming in of the proofs. While it is to be conceded that some of the matters relied on in the bill can well be availed of as a defense to the action at law, there are others coupled therewith cognizable only in equity. A court of equity, when it takes possession of the cause of action, will proceed to determine and settle all the matters connected therewith between the parties.

There is sufficient in the bill to justify a hearing on the merits, and the demurrer is therefore overruled.