## UNITED STATES *v.* MASON & HANGER COMPANY.

### APPEAL FROM THE COURT OF CLAIMS.

No. 121. Argued November 24, 1922.—Decided December 4, 1922.

A building contract, made through the War Department, provided that the contractor should be reimbursed for such actual net expenditures in the performance of the work as might be approved or ratified by the contracting officer, including " such bonds, fire, liability, and other insurance as the contracting officer may approve or require;" that monthly statements of costs should be made, upon which, in case of disagreement, the decision of the contracting officer should govern; and that statements so made and all payments made thereon should be final and binding on both parties. *Held,* that where a payment made by the contractor as a premium on its bond to secure the performance of the contract was thus approved and repaid as part of the cost of the work, the decision and action of the officer were conclusive, and that the Comptroller of the Treasury was without power to deduct the amount from other moneys due the contractor, upon the ground that the expense was not among those for which the contract promised reimbursement.  P. 325.

56 Ct. Clms. 238, affirmed.

APPEAL by the United States from a judgment of the Court of Claims.  A rehearing was granted in this case: but, after reargument, the judgment below was again affirmed, April 9, 1923, by a per curiam decision, which will be reported in volume 261.

*Mr. Alfred A. Wheat,* Special Assistant to the Attorney General, with whom *Mr. Solicitor General Beck* was on the brief, for the United States.

*Mr. George A. King,* with whom *Mr. William B. King* and *Mr. George R. Shields* were on the brief, for appellee.

Mr. Justice McKenna delivered the opinion of the Court.

Appeal from a judgment of the Court of Claims which awards the appellee, plaintiff in the Court of Claims, the sum of $12,064.52, composed of three sums which are respectively of the amounts of $2,500, $450 and $9,114.52. The last two sums the United States does not contest. The sum of $2,500 is only, therefore, in question. The amount is charged to be due (as the other sums were) upon what are called " cost plus contracts " for the construction of certain buildings at Camp Zachary Taylor, near Louisville, Kentucky.

It is provided in Article II of the contract that " the contractor shall be reimbursed . . . for such of its actual net expenditures in the performance of said work as may be approved or ratified by the contracting officer . . . (h) Such bonds, fire, liability, and other insurance as the contracting officer may approve or require; and such losses and expenses, not compensated by insurance or otherwise, as are found and certified by the contracting officer to have been actually sustained (including settlements made with the written consent and approval of the contracting officer) by the contractor in connection with said work, and to have clearly resulted from causes other than the fault or neglect of the contractor. . . ."

The United States contends that within the meaning of Article II the premium paid on a bond of $250,000, that being the amount fixed by the War Department, was not an expenditure in the performance of the work. The Court of Claims decided the contrary and supported its decision by the action and approval of the War Department. And there was no hesitation on the part of the Department. It recognized the obligation of the Government under the contract to pay to the contractor the

amount of premium, and negotiated with the surety companies for a reduction of it in the interest of the Government. The premium was approved by the contracting officer as required by Article II and paid as part of the cost of the work and was not questioned for over two years. Its amount was later deducted from other sums due the contractor.

What is the import of this practical interpretation? The Government does not contend that the words of the contract were dictated by statute. They are, therefore, the words of the contracting officer to express and provide for the purpose of the Government in exercise of the duty with which he was charged, and used as a declaration and measure of the rights and obligations of the parties to the contract. His subsequent conduct is necessarily to be considered a definition of them. The officer in a sense is a party to the contract, not only representing but speaking for the impersonality of the Government. Competent, therefore, it would seem, to declare the meaning of the contract.

We are, however, not called upon to pass upon the conflicting contentions. The contract contains other provisions that determine the liability of the Government.

Article IV of the contract provides for a monthly statement of the elements of costs upon which, if there be disagreement, the decision of the contracting officer " shall govern." It is further provided that " the statement so made and all payments made thereon shall be final and binding upon both parties hereto, except as provided in Article XIV hereof." Article XIV requires the contract to be interpreted as a whole, not by any special clause, and takes care to reserve the determining decision to the officers concerned with the work, the final decision being that of the Secretary of War. Article IV, indeed, is the complement and elaboration of the provision of Article II (quoted above) which provides that the contractor is to

be reimbursed for such of its expenditures " as may be approved or ratified by the contracting officer."

We have decided that the parties to the contract can so provide and that the decision of the officer is conclusive upon the parties. *Kihlberg* v. *United States,* 97 U. S. 398; *Martinsburg & Potomac R. R. Co.* v. *March,* 114 U. S. 549; *United States* v. *Gleason,* 175 U. S. 588; *Ripley* v. *United States,* 223 U. S. 695. This is extending the rule between private parties to the Government.

There were such decisions, and settlement, and payments, in consequence of them, as we have seen. Over the effect of these the Comptroller of the Treasury has no power. They were the acts and duty of the officer in charge, in the expression of which there was no ambiguity, and were, therefore, conclusive in effect.

*Judgment affirmed.*