## UNITED STATES v. HARDAWAY CONTRACTING CO.

(District Court, E. D. South Carolina, at Charleston. November 21, 1924.)

No. 1159.

United States ☞70(1)—Provision that monthly statements and payments under cost plus contract should be conclusive held not modified by other provisions.

A government contract on a cost plus basis provided for monthly payments on statements to be prepared by the contracting officer and the contractor, that if contractor and contracting officer could not agree the decision of the contracting officer should govern, and that the statement and all payments made thereon should be final and binding, except as provided in another article, under which disputes might be referred to another officer, the final decision being in the Secretary of War. *Held*, that provision that monthly statements and payments were conclusive was not modified by other provisions of the contract.

At Law. Action by the United States against the Hardaway Contracting Company. On motion to strike out part of answer. Denied.

F. Edward Mitchell, Sp. Asst. Atty. Gen., and J. D. E. Meyer, U. S. Atty., of Charleston, S. C., for the United States.

Douglas McKay, of Columbia, S. C., for defendant.

ERNEST F. COCHRAN, District Judge. The government brought this action, alleging in substance that the government and defendant entered into a certain contract for the construction of certain works during the prosecution of the recent war, and that the defendant represented that it had the facilities for the prosecution of such work, when in fact it did not have such facilities, and that the defendant also by its fraud and negligence in the prosecution of the work rendered the cost thereof excessive. The contract is what is known as a "cost plus contract," and under the terms of the contract the supervision and control of the entire work was by an officer of the government denominated the contracting officer. There is no charge in the complaint that the contracting officer was guilty of any negligence or fraud, or connived in any way in any fraud or negligence of the defendant.

The defendant's answer set forth "that all of its acts were authorized and approved, and all of its expenditures were authorized, audited, and approved, by representatives and agents of the government, and settlements under the contract were made between it and the United States of America, which were unquestioned and unassailed for more than five years after the work was

completed and accepted." The plaintiff made a motion to strike out from the answer the following words: "Were unquestioned and unassailed for more than five years after the work was completed and accepted," but afterwards, at the hearing, this motion was amplified by a stipulation and agreement of counsel, and the motion was made applicable to *all* of the language of the answer hereinabove first quoted.

The defendant bases its answer upon that portion of article IV of the contract, which provides for monthly payments upon the contract upon statements then to be made up, with the further provision that the statements so made and all payments thereon shall be final and binding upon both parties, except as provided in article XIV. Both parties concede that the monthly statements and payments are not conclusive if fraud was practiced, or if there was such gross negligence as would imply bad faith. The sole question, therefore, is whether the monthly statements and payments are final and binding upon the government, so as to preclude the government from any action for damages on account of the negligence of the defendant in the prosecution of the work.

I think the decision of the Supreme Court of the United States in U. S. v. Mason & Hanger Co., 260 U. S. 322, 43 S. Ct. 128, 67 L. Ed 286, is controlling. In that case a similar contract was under consideration. A payment was made by the contractor as the premium on its bond to secure the performance of the contract. This payment was approved by the contracting officer and repaid as a part of the cost of the work. It was held that the decision and action of the contracting officer were conclusive, and that the Comptroller of the Treasury was without power to take the money from other moneys due the contractor, on the ground that the expense was not among those for which the contract promised reimbursement. The court based its decision upon article IV of the contract, providing for a monthly statement of the elements of cost upon which the decision of the contracting officer "shall govern," and upon the provision that "all statements so made and all payments made thereon shall be final and binding upon both parties hereto, except as provided in article XIV hereof." The court then said: "Article XIV requires the contract to be interpreted as a whole, not by any special clause, and takes care to reserve the determining decision to the officers concerned with the work, the final decision being that of the Secretary of War."

The plaintiff says, however, that the court in this case did not advert to certain other clauses of the contract, which would show that the monthly statements are not absolutely final and binding, and that a petition for rehearing was allowed. But these points were called expressly to the attention of the court in the petition for rehearing. That case and the similar case of U. S. v. Northeastern Construction Co., 261 U. S. 610, 43 S. Ct. 518, 67 L. Ed. 825, were reargued, and the court in a per curiam opinion stated: "Upon rehearing, the former opinions, as well as the judgments heretofore rendered, are affirmed." It thus appears that the court took pains to say that, not only were the judgments affirmed, but the "former opinions" as well. In view of this state of the record of the Supreme Court's decision, it seems to me that, if the other parts of the contract relied upon by the government as modifying the clause relied upon by the defendant are to have that effect, it would be for the Supreme Court to modify its decision, and not for this court.

However, in view of the very earnest and elaborate argument and numerous citations of authorities that have been presented on behalf of the plaintiff and in view of the fact that Judge Sater, in U. S. v. Bentley & Sons (D. C.) 293 F. 229, adopted the construction claimed by the government, and in a very exhaustive opinion came to the conclusion that the court was not concluded by the decision of the Supreme Court in the Mason & Hanger Case, and that the other parts of the contract relied upon by the plaintiff did have the effect of modifying the clause relied upon by the defendant, I will consider the question as if it were not concluded by the Mason & Hanger Case. Upon considering the authorities cited by the plaintiff and a careful study of the subject, I have come to the conclusion that the position taken by the government is not tenable.

The first position taken by the government as a starting point for its conclusions is that by article XIV it is expressly provided that the contract shall be interpreted as a whole, and the intent of the whole instrument rather than the interpretation of any special clause shall govern. This much may be conceded. This clause is simply the expression of the general law, and the court would look at the whole contract, even if such a clause had not been placed in it. The effect of this clause is simply to emphasize and call special attention to what is the existing law.

Before examining those portions of the contract which the plaintiff claims modify article IV, it would be well to consider briefly article IV itself. The article provides that the contracting officer and the contractor shall prepare monthly statements showing the cost of the work, the cost of the materials furnished and a certain proportion of the contractor's fee, etc. If there is any dispute as to any items entering into such statement, the contract provides that the decision of the contracting officer shall govern. Upon the statements being finally made each month, provision is made for payment according to such statements. The contract then provides that the "statements so made and payments made thereon shall be final and binding upon both parties hereto, except as provided in article XIV herein."

Article XIV provides for the reference of any disputes arising under article IV to the officer in charge of cantonment construction, and if the contractor shall be aggrieved by the decision of the officer in charge of cantonment construction, he shall have the right to submit the same to the Secretary of War, whose decision shall be final and binding upon both parties. It does not appear that any disputes were referred to the officer in charge of cantonment construction, nor was there any submission of any questions to the Secretary of War. So that, if there are no other parts of the contract which require a different construction, it would appear to be plain that under the language of the contract the statements and payments made would be conclusive, in the absence of fraud or such gross negligence as to imply bad faith. The government claims, however, that there are certain other portions of the contract which require a different construction of this portion of article IV. I will now consider these other parts of the contract.

The first point that the government makes is that in article IV there is a provision that upon the final completion of the work the contracting officer shall pay to the contractor the unpaid balance of the cost of the work and of the fee as determined under the contract, and is silent as to such final payment being final and binding upon both parties. The government argues that the contract would hardly have provided for monthly payments to be final and binding, so as to be absolutely conclusive, except as to fraud or gross negligence implying bad faith, and then remain silent as to the final payment. I do not think this argument sound. It is to be observed that the clause in question, which is the last clause of article IV, makes no mention of any final "statement." The clause simply provides that upon the "final *completion*" of the work the contracting officer shall "*pay*" to the contractor the unpaid balance of the cost of the work and of the fee as determined under articles II and III. There is no provision for any making of a final statement *as such* in this clause of the contract. It necessarily follows that the true construction of the contract is that the last monthly statement made in accordance with the first part of article IV would become the final statement, and in making such statement the contracting officer's decision would be absolute, final, and binding, under the provisions made as to the monthly statements. There was therefore no necessity for the contract to provide that any final statement should be conclusive and binding, because nothing is said in the contract about any final statement, and the only statements provided for are the monthly statements, and necessarily the last monthly statement would in the nature of things be the final statement.

The argument of the government must therefore rest finally on the proposition that the failure of the contract to make the final "*payment*" conclusive and binding in express terms would be such an anomaly, when the monthly statements and payments had been made conclusive and binding, as to evidence an intention that the monthly statements and payments should not be absolutely conclusive and binding. In the first place, it might be sufficient to say that so the contract is written in plain and unambiguous terms. The contract says, as plainly as language can state it, that the monthly statements and payments are to be final and binding. The mere failure to state in terms that the last payment should be final and binding is hardly evidence of an intention that the provision as to the monthly statements and payments should receive some construction different from the plain import of the language employed.

But there is another reason why the argument of the government cannot prevail. Since the clause relied upon by the government makes provision only for a final "*payment*," and not for a final "*statement*," there was no necessity for any clause making the final completion of the work and payment thereon conclusive, for, although the contract makes no provision to that effect, nevertheless, when the work is completed, accepted by the contracting officer and paid for by him, that would constitute

such a settlement as a matter of law as would preclude either party from opening up the settlement, save for fraud or such gross negligence as would imply bad faith. In this respect there is quite a difference between a monthly payment upon a partial performance of the contract and a final payment when the contract has been' completed and accepted. If there had been no provision in the contract making the monthly statements and payments final and binding, then such monthly statements and payments would not have been conclusive upon the rights of the parties, but every monthly statement and payment could have been reopened upon the final settlement. In order to guard against this, and have matters determined monthly as the work progressed, and while everything was fresh in the minds of the parties, so as to avoid mistakes and future controversies, the contract provided that the monthly statements and payments should be final and binding. There was a real reason and necessity for this. But there was no real necessity, in making provision for final payment only, to add a clause that such final payment should be conclusive 'and binding, for it would have that effect (save as to fraud or gross negligence implying bad faith) without any such provision. I do not think that the failure of the contract to provide that the completion of and final payment for the work should be conclusive and binding is any reason whatever to cut down and modify in any way the plain language that the monthly statements and payments shall be final and binding.

The next point made by the government is that the clause in question upon which the defendant relies must be modified, in view of that portion of article V of the contract, which provides that the contractor shall preserve for a period of two years after its completion or cessation of the work under the contract all books, records, and other papers, etc. The argument of the government is that this last-mentioned clause has no meaning and no effect whatever, if the monthly statements are made final and binding. The answer to this position is plain. The government may have desired the preservation of the records, in order to enable it to bring any action for fraud or gross negligence which would imply bad faith. It can be very readily conceived that the government might find it very valuable to have all the records preserved in case it should desire to bring such action. It might also have thought it best to preserve all of the records for the benefit of any congressional investigation that might be made. It is well known that such investigations are frequently made, and it was probably thought best to preserve the records for at least two years for that purpose. In addition to that, the clause might have been inserted with a view to preserve the records for historical or other purposes. It is not necessary to consider the various purposes for which this clause may have been inserted. It is sufficient to say that there may have been reasons for insertion of such clause, entirely aside from article IV in reference to the monthly payments. Effect can be given to this clause without cutting down the plain and unambiguous language of article IV in reference to the monthly payments.

The next position taken by the government is that, inasmuch as article XII provides that all rights of action for any breach of the contract by the contractor are reserved to the United States, full effect cannot be given to this clause of article XII if the provision in article IV in reference to the monthly statements is allowed to stand in its entirety as claimed by the defendant. Article XII deals entirely with the right to transfer or sublet the contract. It provides that neither the contract nor any interest therein shall be assigned or transferred. It 'also provides that the contractor shall not enter into any subcontract without the consent and approval in writing of the contracting officer. It then uses the following language:

"In case of such assignment, transfer or subletting without the consent or approval in writing of the contracting officer, the contracting officer may refuse to carry out this contract either with the transferor or transferee, but all rights of action for any breach of this contract by the contractor are reserved to the United States."

Article XII was evidently suggested by section 3737, R. S. U. S. (Compiled Statutes, § 6890). There are some differences between section 3737, R. S., and article XII, but it is not necessary to state such differences, for they are unimportant in the view that I take of this matter. Whether article XII was taken from section 3737, R. S., or not, I cannot see that the reservation to the government of rights of action for breach of the contract contained in article XII should be allowed to cut down the plain meaning of article IV in reference to monthly statements and payments. I think that this clause in reference to the reservation arose in the following manner: The draughtsman of article XII first provided

that the contract should not be assigned or sublet without the consent of the contracting officer. He next provided that, if it was transferred or sublet without such consent, the contracting officer might refuse to carry out the contract either with the transferor or the transferee. At this point, no doubt, there arose in the mind of the draughtsman the idea that, if the contracting officer under this provision refused to carry out the contract, the other party might claim that such action amounted to a cancellation or rescission, so that it would no longer afford a basis for a cause of action for its breach, or that there would be a waiver on the part of the government of its claim to sue for a breach of the contract. In order to safeguard such question, the draughtsman evidently added the clause, "but all rights of action for any breach of this contract by the contractor are reserved to the United States." The reservation clause is in article XII, which refers solely to transfers and subletting. It is also a part of the sentence which provides that the contracting officer may refuse to carry out the contract, and I think sound construction requires that this reservation clause be restricted in its application to article XII.

If such be the case, it could not be deemed in any way to militate against the full effect sought to be given to the clause in article IV in reference to monthly payments. But even if the reservation to the United States of the rights of action for breach of contract contained in article XII is not limited in its application to article XII, nevertheless I cannot see that the reservation of the right to sue for breach of contract is inconsistent with the construction claimed by the defendant for that clause of article IV relating to the monthly statements and payments. Full effect can be given to this clause without modifying the clause in article IV relating to monthly statement and payments. If the view of the government should be adopted, article IV is practically destroyed so far as the clause relating to monthly payments is concerned. The government's contention is that the clause in article IV in reference to payments destroys the reservation of action contained in article XII. But it might just as well be argued that the clause contained in article XII, if it means what the government says it means, destroys the clause in article IV relating to monthly payments.

The true solution of the question is that neither must be destroyed. I cannot conceive that any draughtsman of a paper would first provide that the monthly payments should be final and binding, and then by a general clause of reservation of actions for the breach of the contract intend by that entirely to destroy and cut out the previous provision as to the finality of the monthly payments. If there is any way to prevent such a construction, it is the duty of the court to adopt it. I think in this case that there is such a way. In my opinion, the clause in article XII was simply placed in there for the purpose of making sure that the refusal on the part of the contracting officer to carry out a contract that had been sublet or assigned without his consent should not prevent the United States suing for a breach of the contract.

In construing this contract, it must be considered as a whole, and the circumstances under which it was executed must be considered. We had entered upon a war which had proved the most disastrous in all history. It was a matter of common knowledge that above everything else it was desirable that America's force should be thrown into the conflict as rapidly as possible. All considerations as to expense of mere money and material were to be sacrificed to speed, in order to win the war quickly, and save in the end, not only money and material, but above all human life. In the drafting of the contract the widest powers were given the contracting officer. Everything was practically under his control. In putting in the contract such a drastic clause, making his decisions on monthly statements and payments final and binding, those who represented the government in drafting the contract may well have thought that it was better to give him these wide powers than to run the risk of delay. It may well have been thought that it would be better for the contracting officer to have the power to waive some costs that might seem excessive, or some acts that might seem negligent, if by so doing other advantages were gained, which tended to speed in the execution of the contract.

In disposing of the matter, I think it proper that it should be stated that the defendant contends that the monthly statements and payments as set forth in the answer constitute a complete defense to the whole action as it now stands, even though it should be conceded that there are charges in the complaint of fraud and gross negligence implying bad faith, on the theory that the plaintiff should first have the monthly statements and payments set aside or voided on the ground of fraud or gross negligence implying bad faith, either by a bill in equity for that purpose or by replication in this

case under the provisions of section 274b of the Judicial Code as amended by the Act of March 3, 1915 (Comp. St. § 1251b). Liberty Oil Co. v. Condon Bank, 260 U. S. 235, 43 S. Ct. 118, 67 L. Ed. 232. But I do not think the decision of this question is necessary to a decision on the present motion. The government has not filed any replication setting forth any facts to void the monthly statements and payments on the ground of fraud or gross negligence implying bad faith, nor has there been any suggestion that it desires to do so. However, in view of the importance of the case and the matters involved, I deem it proper to give the government that opportunity, in order that it may file such replication, if it should be so advised.

For the purpose only of disposing of this motion, I have adopted the view of the government that the action is an action in tort for fraud and negligence. But I have assumed this for the purposes only of this motion, and inasmuch as there may be some question as to the nature of the cause of action, any statements made in this respect are not to be held as binding upon either party hereafter. In so far as the charges of negligence are concerned, it is my view that the monthly statements and payments set forth in the answer are conclusive and binding.

I think, therefore, that the motion should be refused. But it is not advisable in all cases to determine questions of this sort absolutely upon a motion to strike. In this case, when all of the evidence is in, the matter may assume a different aspect. In addition to this, while the case will be undoubtedly a voluminous one, the introduction of the monthly statements and payments will not add unduly to the size of the record. The case will no doubt be appealed by one party or the other. It is well, therefore, that the record should be in such shape that one appeal may dispose of the whole matter.

For these reasons, I do not deem it advisable to preclude the government from raising the same point as to the finality and conclusiveness of the monthly statements and payments upon the trial of the case, either by objections to their introduction, or by a motion to exclude them, or in such other form as it may deem advisable, provided the question be presented in such manner as not to prevent the final determination of all the issues by the lower court and the appellate court upon the trial of the case.

For these reasons, it is ordered that the motion to strike out that portion of the answer hereinbefore quoted be and the same is refused, without prejudice to the government to renew its objections to the same upon the trial of the cause in the manner hereinbefore stated.

It is further ordered that the plaintiff's attorneys may, within 30 days from the date of this order, apply to the court, upon due notice to the attorneys of the defendant, for an order allowing the plaintiff to file a replication to that portion of the answer sought to be stricken out in the present motion, if they be so advised.