## UNITED STATES v. A. BENTLEY & SONS CO.

(Circuit Court of Appeals, Sixth Circuit. January 6, 1927.)

No. 4655.

1. Pleading ⟨⟩8(15)—Allegations of fraudulent breach of cost-plus army cantonment construction contract held mere conclusions.

Allegations of government's petition that contractor's breach of cost-plus contract for construction of army cantonment, causing excessive costs, was in several instances fraudulent, held mere conclusions.

2. United States ⟨⟩73—Provisions of army cantonment construction contract for supervision by contracting officer held not to prevent contractor doing anything, except as directed.

Provisions of cost-plus contract for construction of army cantonment, subjecting work "in every detail" to "supervision, direction, and instruction" of contracting officer, held not to mean that contractor was to do nothing, except as in detail directed by government.

3. United States ⟨⟩73—Contracting officer's approval and payment of expenditures under cost-plus army cantonment construction contract held binding, absent fraud or gross mistake.

Under cost-plus contract for construction of army cantonment, providing that decision of contracting officer on monthly statements shall govern, and that payments thereon shall be final and binding on both parties, contracting officer's approval of expenditures and payment thereunder was binding, in absence of fraud or gross mistake amounting to fraud.

4. Pleading ⟨⟩8(13)—Allegation that constructing quartermaster lacked authority to make binding settlement under cost-plus contract for construction of army cantonment held mere conclusion.

Allegation of government's petition for breach of cost-plus contract for construction of army cantonment that constructing quartermaster lacked authority to make settlement with contractor in any way binding or conclusive on parties held mere legal conclusion.

5. Pleading ⟨⟩34(5)—Allegations of government's petition that constructing quartermaster was not successor of contracting officer as to work under cost-plus contract held negatives pregnant.

Allegations of government's petition for breach of cost-plus contract for construction of army cantonment that constructing quartermaster was not successor in office nor appointed general representative of contracting officer, and that contracting officer's duties were never assigned or delegated to him, held negatives pregnant, in not repelling inferences from averments that he was special representative of contracting officer, and that some of such officer's duties were assigned to him by Secretary of War.

6. United States ⟨⟩73—Whether constructing quartermaster was contracting officer's representative as respects army cantonment construction contract held dependent on his authorized acts, and not on his title.

Whether constructing quartermaster was representative of contracting officer in supervising work and approving expenditures under cost-plus contract for construction of army cantonment held not dependent on allegation that he was not such representative, or on title by which he was designated, but on what he did at instance and by authority of government.

7. Principal and agent ⟨⟩161(2)—Principal, after approving and accepting agent's acts, cannot repudiate some of the acts solely because he withheld from agent a nominal title.

Principal cannot confer on agent authority to do certain acts, accept and approve them as

done, and thereafter repudiate such of them as he chooses, solely because he withheld from agent, perhaps without knowledge of other party, official or nominal title of the one or class through whom he contracted to act.

**8. United States ⊝75—Allegation that constructing quartermaster had immediate charge of work under army cantonment construction contract held to establish that he was contracting officer's representative.**

Allegations of government's petition for breach of cost-plus contract for construction of army cantonment, that construction work was immediately in charge of constructing quartermaster, who under authority of government approved and accepted work and made payments under contract, *held* to show that quartermaster was representative of contracting officer, requiring allegations of positive facts to contrary.

**9. United States ⊝75—That government made payments under cost-plus army cantonment construction contract more frequently than required held not to lessen binding effect thereof.**

Where cost-plus contract for construction of army cantonment authorized contracting officer to make payments monthly, "or at more frequent intervals," to enable contractor to take advantage of discounts, or for other lawful purposes, fact that government made payments more frequently than it was obliged to do under contract *held* not to lessen binding force of its approval and acceptance of work.

In Error to the District Court of the United States for the Eastern Division of the Southern District of Ohio; Smith Hickenlooper, Judge.

Action by the United States against the A. Bentley & Sons Company. Demurrers to portions of the petition were sustained, and the action dismissed, and the United States brings error. Affirmed.

See, also, 293 F. 229.

Jas. M. Butler, Sp. Asst. Atty. Gen. (Haveth E. Mau, U. S. Atty., of Cincinnati, Ohio, and Roscoe C. McCulloch and Claude J. Bartlett, Sp. Asst. Attys. Gen., on the brief), for the United States.

Harold W. Fraser, of Toledo, Ohio (E. J. Marshall, of Toledo, Ohio, John Wilson, of Columbus, Ohio, and George P. Hahn, of Toledo, Ohio, on the brief), for defendant in error.

Before DENISON, MOORMAN, and KNAPPEN, Circuit Judges.

MOORMAN, Circuit Judge. This is a suit by the government against the contractor which constructed the army cantonment at Chillicothe, Ohio. It is based on a "cost-plus contract," under which the contractor received as compensation for its services a fixed percentage of the cost of the work. The contractor obligated itself to do the work "in accordance with the drawings and specifications to be furnished by the contracting officer, and subject in every detail to his supervision, direction and instruction"; to keep "at the site of the work a duly appointed representative, who shall receive and execute on the part of the contractor such notices, directions, and instructions as the contracting officer may desire to give"; and to "use its best efforts in all its acts hereunder to protect and subserve the interest of the contracting officer and the United States."

The government agreed to reimburse the contractor "for such of its actual net expenditures in the performance of said work as may be approved and ratified by the said contracting officer." To effect payment on the work the contractor and the contracting officer were required to prepare monthly statements showing as completely as possible the cost of the work up to and including the last day of the previous month, and the contractor was required to deliver to the contracting officer the original pay rolls for labor, the original invoices for materials purchased, and all other original papers not theretofore delivered, supporting the expenditures claimed by the contractor to be included in the cost of the work. On or about the 9th day of each month the contracting officer was required to pay to the contractor the cost of the labor and material so furnished, less any previous payments for the same matters. With reference to the acceptance of the work and the payments so directed, it was provided that, "if there be any item or items entering into such statement upon which the contractor and the contracting officer cannot agree, the decision of the contracting officer as to such item or items shall govern; * * * the statement so made and all payments made thereon shall be final and binding upon both parties hereto, except as provided in article 14 hereof;" and further, by article 14, that the contractor should have the right of appeal from any decision of the contracting officer to the officer in charge of cantonment construction, and, if it felt aggrieved by the decision of the latter, the right of further appeal to the Secretary of War, whose decision should be final and binding upon both parties.

The amended petition consisted of 28 paragraphs, to which there was filed an amendment. Defendant filed a general demurrer to the amended petition and separate demurrers to paragraphs 16 to 27 thereof, both inclusive. The court overruled the general demurrer and all separate demurrers, except those directed

to paragraphs 17, 19, 20, and 23, which were sustained. Counsel for plaintiff then advised the court that they did not desire further to amend or prosecute the suit, unless and until the rulings sustaining the separate demurrers had been set aside or reversed. Thereupon the court ordered that the prayer of the petition be denied, and that the action be dismissed. It is from that order that error is prosecuted. The question is whether a cause of action is stated in any of the paragraphs to which demurrers were sustained, when considered in connection with the other averments of the amended petition and the amendment thereto.

Paragraph 17 asks for damages in the sum of $1,200,000, resulting from the employment of incompetent workmen, improperly equipping them to perform the work, and the payment of extravagant wages. Paragraph 19 alleges extravagance in conducting the commissary, whereby employees were charged 30 cents for meals which cost approximately 54 cents, and were given meal tickets and permitted to retain them after they were discharged, the claim of loss being $160,987.53. Paragraph 20 deals with the salaries paid to defendant's general superintendent, office engineer, and other employees who were engaged on the work. It is not claimed that they were unnecessarily employed, or that proper wages paid them were not chargeable to the government, but that the wages paid were excessive. On this account a recovery of $25,276.68 was sought. Paragraph 23 charges the hiring of unnecessary equipment at excessive prices, for which a recovery of $150,000 was asked.

[1] Considering these paragraphs in connection with the rest of the amended petition and apart from the amendment, we observe that defendant engaged in constructing the camp, made certain expenditures for labor and material in so doing, and was repaid the amounts thus expended by the government's representative in charge of the work. It is not charged that these costs incurred by defendant were not approved by the contracting officer or his representative; indeed, quite the opposite is to be inferred from what is alleged, if it is not specifically stated in the phrase "and from time to time was promptly paid for such expenditures as in said contract provided." While it is alleged that the expenditures were extravagant, it is nowhere stated—with a single exception regarding which the trial judge retained the case—that defendant made any profit or received any benefit, either directly or indirectly, out of its alleged extravagance. No facts are stated showing fraud, or that the

16 F.(2d)—57

maximum fee under the contract was not earned on admittedly proper expenditures. The claims are founded on a breach of defendant's contractual duty to "use its best efforts * * * to protect and subserve the interest" of the plaintiff. It is true that the breach is alleged in several instances to have been fraudulent, but these allegations are conclusions of the pleader and cannot give to the action the color of a suit for fraud. Chamberlain v. United States, 270 U. S. 347, 46 S. Ct. 225, 70 L. Ed. 619.

[2, 3] Defendant contends that the clause in the contract subjecting it, in doing the work, "in every detail," to the "supervision, direction, and instruction" of the contracting officer, must be held to mean that defendant was to do nothing except as in detail directed by the plaintiff. We cannot subscribe to so broad an interpretation of the clause, although it evidently gave to the contracting officer a general supervision over the work as to results with whatever incidental effect that might have upon the manner of doing it. The petition clearly shows that this supervision was exercised by an officer of the government—presumably one authorized to act as contracting officer, and certainly one whose actions as such the government approved—and that the expenditures of defendant for which it was repaid received his approval. This latter action on his part, in the absence of an allegation of fraud or gross mistake amounting to fraud, was binding on the parties according to article 4 of the contract, which provided that the decision of the contracting officer upon the required monthly statements "shall govern," and that all payments made "thereon" shall be "final and binding on both parties." United States v. Mason & Hanger, 260 U. S. 323, 43 S. Ct. 128, 67 L. Ed. 286; United States v. George A. Fuller Co. (C. C. A.) 14 F.(2d) 813.

[4, 5] It is insisted, however, that the amendment shows that the expenditures of defendant did not receive the approval of the contracting officer, and for that reason the Mason & Hanger Case does not apply. With this we cannot agree. The amendment alleges that monthly statements of costs were not prepared by any one; that no payments were made to the defendant by the contracting officer, either on a basis of such statements or otherwise; that no statements were either prepared or approved by the contracting officer; "that the work of constructing said cantonment was immediately in charge of a constructing quartermaster stationed at Chillicothe, Ohio; that the said constructing quartermaster was an officer in and a member of

said cantonment division; that the said constructing quartermaster was subordinate to other officers in said cantonment division, to wit, the chief of said division, the construction officer thereof, and the supervising constructing quartermaster"; that the constructing quartermaster made payments to the defendant on account of labor and material at intervals of a few days and often daily on vouchers approved by himself; "that the constructing quartermaster was without authority, either in his capacity as such constructing quartermaster or in his capacity as disbursing officer, to make any payments or settlements, either intermediate or final, in any way binding or conclusive upon either the plaintiff or the defendant," and that "at no time was the said constructing quartermaster the successor in office of the contracting officer; that the duties of the contracting officer were never assigned to the said constructing quartermaster by the Secretary of War; that the said constructing quartermaster was never appointed the general representative of the contracting officer; and that the powers, authority, and duties vested in and imposed upon the contracting officer by articles 2 and 4 of the said contract with respect to payments and the preparation of statements of cost and the approval thereof were never delegated or assigned to the said constructing quartermaster."

It will be observed that the claim that the constructing quartermaster was without authority to make settlement with the contractor is limited by the statement in "any way binding or conclusive upon either the plaintiff or the defendant." As so qualified the allegation is but a legal conclusion. The averments that the constructing quartermaster was not the successor in office of the contracting officer, that he was never appointed the general representative of the contracting officer, and that the duties of the contracting officer were never assigned to him by the Secretary of War, are negatives pregnant. They do not repel the inference resulting from other averments that he was a special representative of the contracting officer and that some of the duties of that officer were assigned to him by the Secretary of War. There is a similar defect in the allegation that the "powers, authority, and duties" vested in and imposed upon the contracting officer by articles 2 and 4 of the contract with respect to payments and the preparation of statements of cost and the approval thereof were never delegated or assigned to the constructing quartermaster.

[6-8] The contract defines the contracting officer as any person to whom the duties of contracting officer may be assigned by the Secretary of War, or any duly appointed representative of that officer. The amendment says that the "work of constructing said cantonment was immediately in charge of a constructing quartermaster stationed at Chillicothe." It thus appears that the constructing quartermaster was given charge of the construction of the camp, and further, by other averments, that acting under authority of the government he approved and accepted the work of the contractor and repaid to it the cost thereof "from time to time as in said contract provided." This the contracting officer or his representative alone had the right to and could do; this the constructing quartermaster did; and this the government approved and accepted as the work of a contracting officer. Whether the constructing quartermaster was a representative of the contracting officer does not depend so much on the allegation that he was not, or on the title by which he was designated, as upon what he did at the instance and by the authority of the government. One cannot confer upon his agent the authority to do certain acts, accept and approve them as done, and thereafter repudiate such of them as he chooses solely because he withheld from the agent—perhaps here without the knowledge of the other party—the official or nominal title of the one or the class through whom he contracted to act. A mere name is not so potent. The petition alleges facts showing that the constructing quartermaster, by whatever name called, was a representative of the contracting officer.[1] The legal effect of those facts cannot be destroyed by anything less than a positive and unmistakable showing of other facts to the contrary. This is not to be found in the averments of the amendment.

[9] The claim that the government made payments on the cost of construction more frequently than it was obliged to do under the contract does not lessen the force of its approval and acceptance of the work. The contracting officer was not restricted to monthly payments, but could make them

---

[1] The official report of the "Board of Review of Construction" of August 31, 1919, at page 61, supports this view. It shows that emergency construction built by the Cantonment Division was under the supervision of a constructing quartermaster, who was officially designated to represent the contracting officer who, in most cases, was the chief of the Construction Division. Of this the court may take judicial notice. Heath v. Wallace, 138 U. S. 584, 11 S. Ct. 380, 34 L. Ed. 1063; Tempel v. United States, 248 U. S. 121, 39 S. Ct. 56, 63 L. Ed. 162.

"at more frequent intervals" to enable the contractor to take advantage of discounts or "for other lawful purposes." The payments were voluntarily made. It was not alleged that they were made for unlawful purposes or on statements not showing accurately the materials and work theretofore used; and obviously the settlements made "at more frequent intervals" had the approval of the government. The contract was never modified, and no payments were made because of any obligation other than those thought to arise under the contract. No facts are stated showing that any payment was brought about by misrepresentation or fraud on the part of defendant. The frequency of payment, the precedent conditions of furnishing statements of costs and material being fulfilled, did not render less binding or final the action of the contracting officer or his representative in approving the expenditures. The petition, as we have said, shows that the constructing quartermaster was a representative of the contracting officer. It is not to be supposed, and ought not to be held, unless imperatively required, that the government intended by the amendment which it filed to disavow this fact. We do not see in the amendment any such requirement.

Judgment affirmed.