## TODD DRY DOCK ENGINEERING & RE-PAIR CORPORATION v. CITY OF NEW YORK.

### No. 11.

Circuit Court of Appeals, Second Circuit.
Nov. 16, 1931.

Arthur J. W. Hilly, of New York City (William J. Leonard and Lester W. Easton, both of New York City, of counsel), for appellant.

E. Curtis Rouse, of New York City, for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

The city was the owner of a dredge which it wished to have generally repaired and overhauled. It advertised for bids at a lump sum under its usual form of contract with detailed specifications; the libellant was the lowest bidder, was awarded the job in June, 1922, and began to perform. As is usual in such cases, disputes at once arose between the libellant and the city's inspectors and engineers as to what work must be done, the officials demanding more than the contractor admitted to be required by the contract. After some fruitless correspondence the contractor appealed to the dock commissioner, who directed him to comply with the demands, and present any claim to the comptroller under section 246 of the City Charter (Laws N. Y. 1901, c. 466 as amended by Laws N. Y. 1910, c. 683). If he refused to comply, the commissioner threatened to take the dredge away, complete the work and charge the surety. The contractor acceded, and having done what was required, presented his claim to the comptroller, who presumably rejected it, though nothing appears in the record. Thereupon he brought suit, which came on to be heard in court and went forward until the judge, seeing that it would involve separate examination of all the sixty-seven items of the claim, sent it to a special commissioner, who completed the evidence, filed a report disposing of each item, and recommended that out of a total of about $20,000, $16,000 should be allowed. The judge confirmed this without change, and the city appealed.

 In ordinary cases if an owner demands more than is called for by a contract like this, the contractor may protest and perform, and later sue on a quantum meruit, but he may not recover for the extra work as a breach. The fact that the contract provided that it should not be modified except in writing would not of course have affected a later oral contract if properly authorized, or an obligation upon a quantum meruit. However, section 419 of the City Charter (Laws N. Y. 1901, c. 466, as amended by Laws N. Y. 1922, c. 661) provides that contracts for supplies of over one thousand dollars shall be let on bids, and this prevents recovery for extra work though ordered by the proper authorities unless the formalities are complied with. Conceivably it might not prevent recovery on a quantum meruit, but that would be for the benefit conferred and not for the cost of the work; and there is no proof at bar of the first. Owing to this limitation a contrac-

tor with the city on being ordered to do extra work must get a new contract let on bids. Practically he can do nothing but stop the work, since he is forbidden to complete it as prescribed, and sue for what he has done and for his lost profits. To remedy the supposed injustice so arising the New York Court of Appeals decided that in cases of municipal contract the contractor might perform the extra work exacted and recover the cost. Gearty v. City of New York, 171 N. Y. 61, 63 N. E. 804. This has no relation to a quantum meruit, but is allowed as an action for damages on the breach. This doctrine is well-settled and we have ourselves followed it. American Pipe Co. v. Westchester County (C. C. A.) 292 F. 941. It is confined to public corporations, cities, towns and the like, and is rather a part of local and municipal, than of general or commercial, law. Detroit v. Osborne, 135 U. S. 492, 10 S. Ct. 1012, 34 L. Ed. 260; American Surety Co. v. Bellingham Nat. Bank, 254 F. 54 (C. C. A. 9); Boston v. McGovern, 292 F. 705, 712 (C. C. A. 1). We accept it as controlling, regardless of whether we could ourselves have reached the same result unaided.

There is a variant depending upon the case of Borough Construction Co. v. City of New York, 200 N. Y. 149, 93 N. E. 480, 140 Am. St. Rep. 633, under which, if the demand is flagrantly beyond the specifications, the contractor must stand his ground and refuse, come what may. It appears to us that this exception is not applicable here. It originated in a case where the officials compelled a contractor to put in an elevator and lights, by which access might be made more genial for those attending the festivities incident to the opening of a New York sewer, the work contracted for. That had so plainly nothing to do with the sewer that the contractor stood at no legal risk in refusing, however much he might suffer indirectly from the outraged sensibilities of those in charge. Here all the disputes affected to concern repairs or additions to the dredge, and really did; the only room for doubt was whether they fell within the contract. While it is clear to us that most of the items did not, we hold that fact irrelevant; else the exception will swallow the doctrine, which in any case necessarily presupposes that the demands are excessive.

All this is beside the question as to how far the orders of the dock commissioner or his representatives to perform the extra work, were conclusive upon the contractor. The contract gave the commissioner power

to "determine the amount, the quantity or quality of the work," "all questions in relation to said work and the performance thereof" or "which may arise relative to the execution of this contract"; and his "decision shall be final and conclusive." In addition the engineer might reject all work as not complying with the specifications; but as no question of improper performance arises, we may disregard this. In Barker v. N. Y., 242 F. 350, we said, though it was not perhaps necessary to our decision, that a clause substantially identical with that just quoted gave an engineer general power to pass on all questions arising, apparently including the meaning of the contract, and that his decision was final, when it was honestly exercised, that is, really exercised at all; and so far as we know, it has not generally been held that such a power stops short of interpreting the meaning of the terms. Goltra v. Weeks, 271 U. S. 536, 46 S. Ct. 613, 70 L. Ed. 1074; U. S. v. Mason & Hanger Co., 260 U. S. 323, 43 S. Ct. 128, 67 L. Ed. 286; J. H. Sullivan Co. v. Wingerath, 203 F. 460 (C. C. A. 2); American, etc., Co. v. Westchester County, 292 F. 941 (C. C. A. 2); Thompson-Starrett Co. v. La Belle Iron Works, 17 F.(2d) 536 (C. C. A. 2). We did however squarely so rule in Dock Contractor Co. v. City of New York, 296 F. 377, and if that doctrine stands, the commissioner's decisions here may be disregarded, though in that event there would seem to be no scope left for them except as to the amounts of material and labor actually rendered, and their correspondence with the standards set, not as that official may determine them, but as the court shall decide.

However, we do not have to determine here whether we should adhere to Dock Contractor Co. v. City of New York, because we think that the record does not show that the commissioner or his representatives ever exercised their power, supposing it to include the meaning of the contract. No doubt we ought to assume that they required only what they supposed the City ought to have; but it does not follow from this that they actually construed the contract, and this must plainly appear when we are dealing with so drastic a provision. If for instance they disregarded the specifications and demanded whatever would put the dredge in proper condition, they cannot be said to have "honestly" exercised their powers. They were bound to consider all parts of the contract before the contractor was concluded; we cannot find as to which items they

did this, and in case of one at least, Cody, he conceded that he paid no attention to the specifications. He was the assistant who directed most of the work, though he says that when in doubt he called in his superiors. But it does not appear even as to them that they acted differently; and upon the trial some of them conceded that the contractor as to some of the items had a claim for extra work, or at least might have. Their testimony at that time does not show whether they had originally construed the specifications, and when the matter was brought to the attention of the dock commissioner, it is apparent that he did no more than direct the contractor to do whatever they told him to. Were we free to follow the New York law, this issue would not be so important, for we should then have only to determine whether the decision, if actually made, was reasonable or "arbitrary." Bowery Nat'l Bank v. N. Y., 63 N. Y. 336; MacKnight, etc., Co. v. N. Y., 160 N. Y. 72, 54 N. E. 661. If this were peculiar to municipal contracts we could adopt it, just as we have adopted the doctrine of Gearty v. N. Y., 171 N. Y. 61, 63 N. E. 804; but it is the general law of that state (Thomas v. Fleury, 26 N. Y. 26; Nolan v. Whitney, 88 N. Y. 648; Cf. Doll v. Noble, 116 N. Y. 230, 22 N. E. 406, 5 L. R. A. 554, 15 Am. St. Rep. 398); and for that reason we are not free to follow it.

■ Thus the case in the end turns upon who has the burden of proving that the power was exercised, the evidence being equivocal. We think it rested upon the city. The contractor sued for extra work, and by hypothesis showed that the specifications did not cover what he was compelled to do. It is true that he must recover upon a breach of the contract; but the recovery is none the less for work which the contract did not require—for extra work in the strictest sense. Whatever the resulting anomaly, so much cannot be doubted. If the city does not meet this prima facie case by showing that the claim was not for extra work because the commissioner found that it was within the contract, the case stands that the city has exacted services to which it was not entitled, that this was a breach and that the measure of damages is the value of what was done.

Finally, the libellant did not accept the decision of the comptroller under section 246 of the City Charter (Laws N. Y. 1901, c. 466, as amended by Laws N. Y. 1910, c. 683) as final. He was told to comply with the orders of the engineers and present his claim, but

there is no evidence that he agreed to accept the comptroller's decision. Indeed, no such defence was pleaded. Whether it was a condition precedent to suit that the contractor must secure a review by the board of estimate under section 246, we need not decide. The city did not plead that he had failed to do so, nor does the evidence prove it. We need not therefore consider the applicability of our ruling as to section 149 of the City Charter in Rodgers & Hagerty v. City of New York, 285 F. 362.

Coming therefore to the separate items we may at once throw out those conceded at the trial. The concession was indeed subject to the respondent's right to "rectify it," but no exception was taken to the report of the special commissioner as to these, and they were thus finally abandoned. We have been over the contested items in detail and agree with the disposition made below and with the reasons given, except as to the following, which we disallow: 17, 18, 23, 29, 40, 41, 42, 47 and 54.

Items 17, 18, 23 and 40: These were for repairs which the specifications did not cover. When these prescribed the details, we think they were controlling, except that the quantities were at most only "approximate"; but when nothing was said, and the work was merely to put this or that part of the dredge in good repair, the contractor took the risk of what might turn up in its general overhauling.

Items 29 and 54: A new boiler was to be furnished. The items are for work necessary to seat it properly and protect the top. It is of no moment that the contractor could not learn of this until the old boiler was taken away. It was a necessary incident to what he had agreed to do.

Items 41 and 42: These concern timbers which were put in places not adjacent to the A frame. The specifications referred to timbers near that frame. They also required (14) all "hull members, soft or decayed to be renewed or repaired." So far as appears the timbers in these items may have been soft or decayed. The libellant did not show that the work was outside the specifications.

Item 47: This was for additional knees. The specifications called for three knees, specifically localizing them. The same reasoning applies to these as to items 41 and 42.

Interest should run from the date when the bill was rendered, February 1, 1924.

Decree modified and as modified affirmed.