## LEEDS & NORTHRUP CO. v. UNITED STATES.

### Civ. A. No. 11257.

United States District Court
E. D. Pennsylvania.

Dec. 27, 1951.

William Nelson West, III, Philadelphia, Pa., for plaintiff.

G. A. Gleeson, Philadelphia, Pa., for defendant.

GRIM, District Judge.

Plaintiff, Leeds & Northrup Company, has filed a complaint containing sixty-two

claims against the United States for goods sold and delivered and demanding judgment in the amount of $23,603.53 with interest and costs. Defendant, United States of America, filed a motion to dismiss the complaint on the ground that under 28 U.S.C. § 1346 this court lacks jurisdiction of the action because it is based on a claim exceeding $10,000. By an order dated January 10, 1951, Judge Bard of this court denied the motion to dismiss for the reason that the separate claims alleged in the complaint are each for an amount less than $10,000, although the aggregate of the 62 separate claims exceeds that sum. Judge Bard's order is the law of the case on the question of jurisdiction.

The amended answer contains two defenses and a counterclaim. In the first and second defenses defendant, the United States, reasserts the jurisdictional objection which it had previously raised in its motion to dismiss. In its second defense the United States admits that plaintiff sold goods to the United States and delivered them on the dates and pursuant to the contracts as alleged in the complaint, except that as to the 16th cause of action the United States alleges payment of $305.45 on account of the claim alleged therein and that as to the 61st cause of action the United States alleges payment of $24.54 representing payment in full of the claim alleged therein. In its second defense defendant also alleges that plaintiff is indebted to the defendant in the sum of $23,516.19, with interest and costs.

Plaintiff has conceded that subsequent to the commencement of this action it received payment from defendant in the sums of $305.45, a portion of claim 16, and $24.54, the total amount of claim 61. By reason of these payments the amount sought to be recovered by plaintiff is concededly reduced to $23,273.54.

The counterclaim alleges that plaintiff is indebted to the United States in the amount of $23,516.19, with interest and costs, on the alleged ground that this sum was paid by mistake to plaintiff on or about December 11, 1944 as reimbursement for expenses allegedly incurred by plaintiff in the performance of Contract NOrd–957, entered into by the plaintiff and the Department of the Navy, which sum the United States alleges was not authorized to be paid to the plaintiff as part of the cost of performing the contract. In its reply plaintiff has denied the allegations of defendant's counterclaim except to admit a payment of $66,740.81 on or about December 11, 1944 on account of the performance of Contract NOrd–957.

Plaintiff has filed a motion for summary judgment under Rule 56, Fed.Rules Civ. Proc., 28 U.S.C., which is the matter now before me.

As appears from defendant's amended answer and plaintiff's concession that it received payments in the respective sums of $305.45 and $24.54, there are no issues between plaintiff and defendant as to the 62 claims alleged in the complaint. The orders and contracts described therein were fully performed by plaintiff and the amounts alleged as due and unpaid (other than the sums of $305.45 and $24.54 subsequently paid) have been withheld only because of a set-off alleged in defendant's counterclaim.

The set-off does not arise out of any of the orders or contracts alleged in the complaint, but out of a prior contract between plaintiff and the Navy Department, performance of which was completed in all respects prior to May 15, 1946. That prior contract, designated as Contract NOrd–957 (and hereinafter sometimes referred to as the Contract), was a cost-plus-fixed-fee contract.

The Contract was duly performed by plaintiff and in accordance with the terms thereof monthly invoices supported by statements of costs incurred by plaintiff in the performance of the Contract were submitted to an authorized representative of the Bureau of Supplies and Accounts. After completion of performance by plaintiff the final invoice and statement of cost were submitted and plaintiff executed a general release in favor of defendant dated May 15, 1946. The Bureau of Supplies and Accounts through authorized representatives accepted all reimbursements

made to plaintiff under the Contract, as is evidenced by the final certification made as of May 15, 1946 by the Navy Cost Inspector of the total costs, including fee, reimbursable under the Contract from its inception to completion.

On September 14, 1948, more than two years after the final certification of Allowable Cost under the Contract, the General Accounting Office, following an audit of Navy Department accounts, took exception to reimbursements to plaintiff aggregating $23,775.64 theretofore made and approved by the Navy Department's Bureau of Supplies and Accounts pursuant to the Contract. The General Accounting Office was not a party to the Contract and was not mentioned therein.

The Navy Department, in a letter dated May 3, 1949 replying to the notice of exception, justified the allowability of most of the cost items to which exception had been taken by referring to specific paragraphs of "Explanation of Principles for Determination of Costs Under Government Contracts, War Department-Navy Department" pursuant to the terms of Article 7(b) of the Contract. However, the Navy Department (through its Supervisory Cost Inspector) concurred in the General Accounting Office's exception to the extent of $351.77 with respect to Contract NOrd–957. How this figure was arrived at is explained in the margin.[1]

The cost items, before apportionment to Contract NOrd–957, which the General Accounting Office and the Navy Department now agree should have been disallowed are as follows: Credit Men's Association (1943) $35.00, (1944) $35.00; Dinner at Union League Club (1943) $31.69; Documentary Stamps for Stock Certificates (1943) $25.10; Interest on Phila. Wage Tax accrued as of 12/31/42 (1943) $342.73; Manufacturer's Excise Tax (1943) $395.59; Oklahoma Sales Tax (1943) $677.45; and Illinois Occupational Taxes (1944) $4,-293.03.

In a letter to the Navy Department dated August 24, 1949, the General Accounting Office revised its exception and reduced it to $23,516.19, which is the amount of defendant's counterclaim in this action. Plaintiff has refused to refund the sum of $23,516.19 on the grounds that this amount was properly paid under the terms of the Contract and that under Article 7(b) thereof the determinations made by the Bureau of Supplies and Accounts as to the reimbursability of the disputed items were final and conclusive on both plaintiff and defendant.

Article 7 of Contract NOrd–957, among other things, provides as follows: "(b) Allowable Cost shall constitute the cost incurred by the Contractor in the performance of this contract and accepted by the Bureau of Supplies and Accounts as chargeable in accordance with 'Explanation of Principles for Determination of Costs under Government Contracts, War Department-Navy Department' * * *. All disputes concerning questions of fact as to Allowable Cost arising under this contract shall be decided by the Chief of the Bureau of Supplies and Accounts subject to written appeal by the Contractor within thirty (30) days of the Secretary of the Navy or his duly authorized representative whose decision shall be final and conclusive upon the parties hereto * *."

The principal question in this case is: Under a contract of this type where it is provided that "all disputes concerning questions of fact as to Allowable Cost arising under this contract shall be decided

1. The Navy Department concurred to the extent of $5,835.59 in the General Accounting Office's exceptions to plaintiff's factory overhead account. However, only a portion of this amount is allocable to Contract NOrd–957. The total amount of the General Accounting Office's exceptions to plaintiff's factory overhead account, which includes all of the items comprising said sum of $5,835.59 is $123,966.24, before apportionment to Contract NOrd–957. After such apportionment, the total amount of the disallowance allocable to Contract NOrd–957 is $7,472.35, which is 6.028% of the total exception to the factory overhead account. Therefore, on the same apportionment (i. e., the ratio of $7,472.35 to $123,966.24), the amount of the actual disallowance concurred in by the Navy Department in regard to Contract NOrd–957 is 6.028% of $5,835.59, or $351.77.

by the Chief of the Bureau of Supplies and Accounts * * * whose decision shall be final and conclusive upon the parties hereto", does the General Accounting Office have the authority to review a decision of the Chief of the Bureau of Supplies and Accounts as to what are allowable costs?

The General Accounting Office derives its authority from the Budget and Accounting Act of 1921, 31 U.S.C.A. § 41 et seq. Section 71 thereof, which requires in substance that all claims and demands by and against the Government of the United States shall be settled and adjusted by the General Accounting Office, is subject to the rights of parties to a contract, including the Government, to provide for some designated person or persons, even if in the employ of one of the parties, to make a final determination of any question which may arise between them. This principle has been unequivocally declared by the courts, including the Supreme Court of the United States, in many cases.

The most recent case in point is that of James Graham Mfg. Co. v. United States, D.C.N.D.Cal.1950, 91 F.Supp. 715, which involved a disputes clause substantially the same as the one in Article 7(b) of Contract NOrd–957. In the Graham case the contractor had fully performed two cost-plus-fixed-fee contracts with the Navy Department. In the course of such performance and in accordance with the terms of such contracts the contractor periodically submitted invoices of cost items which the Bureau of Supplies and Accounts reviewed and determined were reimbursable. The contractor was reimbursed for such costs by the Navy Department. Subsequently the General Accounting Office took an exception to reimbursements of cost items totaling $13,199.51. The Bureau of Supplies and Accounts concurred in regard to $5,312.96 of the costs, but as to the balance of $7,886.55 the Bureau reaffirmed its prior determination. The General Accounting Office refused to accept the Bureau's decision and withheld $13,199.51 from the final payments due for work under the contracts. Graham, the contractor, thereupon brought suit against the United States, but only for $7,886.55, which was the amount that the Navy Department had reaffirmed as properly reimbursable costs. Graham did not sue the government for the $5,312.96, the amount of those costs in which the Navy Department concurred with the General Accounting Office as being unallowable.

Graham made a motion for summary judgment which the Court granted, holding, 91 F.Supp. at page 716:

"The powers of the Comptroller General are extensive and broad. But he does not, absent fraud or overreaching, have authority to determine the propriety of contract payments when the contracts themselves vest the final power of determination in the contracting executive department. United States v. Mason & Hanger Co., 1922, 260 U.S. 323, 43 S.Ct. 128, 67 L.Ed. 286; United States v. Moorman, 1950, 338 U.S. 457, 70 S.Ct. 288 [94 L.Ed. 256]; John H. Mathis Co. v. United States, D.C.N.J. 1948, 79 F.Supp. 703; Penn Bridge Co. v. United States, 1924, 59 Ct. Cl. 892; Carroll v. United States, 1932, 76 Ct.Cl. 103; McShain Co. v. United States, 1936, 83 Ct.Cl. 405; H. W. Zweig Co. v. United States, 1941, 92 Ct.Cl. 472.

"True, the contracts in suit do not expressly state that the Navy Bureau of Supplies and Accounts' determination of the reimbursable costs shall be conclusive. But the most likely intention to be deduced from what is said is that the Bureau's decision should govern. And, at all events, there is no doubt but that the parties intended that the question of reimbursable costs should be settled within the Navy Department. For the Secretary of the Navy is vested by the contracts with the power to finally determine all disputes for which the contracts do not specifically provide any other mode of settlement."

The present case is strikingly similar to the Graham case in all but one respect. The present plaintiff, in denying the Government's counterclaim for $23,516.19, is claiming that he was entitled not only to those payments, amounting to $23,-

164.42 which the Navy Department has re-affirmed as being properly reimbursable under the Contract, but also to those payments, amounting to $351.77, which both the General Accounting Office and the Navy Department now agree should have been disallowed. Whether plaintiff has a right to retain the comparatively small sum of $351.77 is a dubious question concerning which I do not have sufficient facts on which to base a decision. There is no doubt, however, that plaintiff is entitled to retain the reimbursements for cost items amounting to $23,164.42 which were determined and redetermined by the Bureau of Supplies and Accounts to be allowable costs under the provisions of Contract NOrd–957.

The Bureau's determinations of questions of fact under Article 7(b) of Contract NOrd–957 are final and conclusive in the absence of fraud. United States v. Wunderlich, 72 S.Ct. 154. For a court to set aside such determinations under Article 7(b), fraud, meaning conscious wrongdoing or an intention to cheat or be dishonest, must be alleged and proved. United States v. Wunderlich, 72 S.Ct. 156.

The Government alleges that there was fraud in the present case. There is no averment of fraud in the pleadings, the only averment of fraud being in the Government's brief. Since the question as to whether or not fraud existed has not been raised by the pleadings it might well be disregarded, but I will not do this because of the possibility of the allowance of an amendment to the pleadings.

A general averment of fraud without specification does not bring fraud into a case. An examination of the specifications of fraud in the Government's brief and an examination of the record do not disclose the issue of fraud in the present case. In order that there be fraud there must be an intentional perversion of the truth, a false representation of a matter of fact, for the purpose of inducing someone to part with something of value. During the progress of the work the plaintiff paid substantial sums as dues to certain associations[2] and contributed substantial sums to charities. It claimed and was allowed these payments as allowable costs in the performance of the contract. The Government argues that the allowance of these items was so "excessive and erroneous" that it constitutes "fraud or overreaching." Perhaps the allowance of some of these costs was erroneous, but since there is nothing to indicate that anything was misrepresented to or concealed from the allowing officer and there is no allegation of bribery or other impropriety there is no fraud in the case.

The Government has also contended that plaintiff has not exhausted its remedies within the Navy Department. "Since the Navy Department concedes the correctness of plaintiff's claim, there is no reason for plaintiff to exhaust the contractual administrative settlement procedure, by appealing to the Secretary of the Navy, as a prerequisite to court action." James Graham Mfg. Co. v. United States, supra, 91 F. Supp. at page 716.

Plaintiff, Leeds & Northrup Company, is entitled to summary judgment in its favor on the complaint and counterclaim in all respects except as to the portion of the counterclaim amounting to $351.77, which represents those reimbursements which both the Navy Department and the General Accounting Office now agree should have been disallowed.

And now, December 27, 1951, in accordance with the foregoing opinion, it is ordered that plaintiff's motion for summary judgment as to the complaint be and it is hereby granted, and judgment may be entered in favor of plaintiff, Leeds & Northrup Company, and against defendant, United States of America, in the amount of $23,273.54, with interest and costs.

It is further ordered that plaintiff's motion for summary judgment as to defendant's counterclaim be and it is hereby granted in all respects except as to the

2. For example: National Association of Cost Accountants, Controllers Institute of America, Purchasing Agents Association.

portion of the counterclaim amounting to $351.77. As to the portion of defendant's counterclaim amounting to $351.77 plaintiff's motion for summary judgment is hereby denied.